UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Scott Summers, et al., | |
| Plaintiffs, | Case No. 14 C 5398 |
| v. | |
| Jesse R. Smart, et al., | Judge John Robert Blakey |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, members of the Illinois Green Party ("ILGP"), dispute the constitutionality of certain elements of Illinois election ballot laws as mandated by the Illinois Election Code and administered by the Illinois State Board of Elections ("ISBE" or "Board"). Compl. [1]. Plaintiffs include the ILGP itself, the Party's prior candidates for state political offices, and a Party member seeking to vote for those candidates. Defendants are members of the ISBE.

On July 14, 2015, Defendants filed an amendment to their answer to Plaintiffs' Complaint listing an affirmative defense of claim preclusion (res judicata). Defs.' Am. Answer [49]. On November 25, 2015, Plaintiffs filed a motion to strike Defendants' affirmative defense. Pls.' Mot. to Strike Defs.' Affirmative Defense [56]. On December 29, 2015, Defendants filed a motion for judgment on the pleadings on the grounds that their first affirmative defense bars Plaintiffs' action. Defs.' Mot. J. Pleadings [65]. For the reasons explained below, that motion is granted and Plaintiffs' Motion to Strike Defendants' Affirmative Defense is denied.

1

I.   Background

    A.   The Parties

Plaintiff Scott Summers is a member of the ILGP, a voluntary association and political party organized in the state of Illinois, who was nominated in 2014 to serve as its candidate for Governor of the State of Illinois. Compl. [1] ¶¶ 2-3. Plaintiffs Omar N. Lopez, Bobby J. Pritchett Jr., David F. Black, Sheldon Schafer, Tim Curtain, and Julie Samuels were other 2014 ILGP candidates for Illinois state offices. *Id.* ¶ 6. Plaintiff Rita Maniotis ("Maniotis") is a registered Illinois voter who wants the opportunity to vote for Plaintiff Summers and the other ILGP candidates. *Id.* ¶ 7. The ILGP is also named as a Plaintiff. *Id.* ¶ 2. Defendants Jesse R. Smart and Charles W. Scholz are being sued in their official capacities as Chairman and Vice-Chairman of the ISBE, respectively. *Id.* ¶¶ 9-10. Defendants Bryan A. Schneider, Betty J. Coffrin, Harold D. Byers, Cassandra B. Watson, William F. McGuffage, Rupert D. Borgsmiller and Ernest L. Gowen are also being sued in their official capacities as ISBE board members. *Id.* ¶ 11.

    B.   The Illinois Election Code

The Illinois Election Code recognizes two categories of political parties: (1) "established parties" (parties that received more than 5% of the vote in the previous election); and (2) "new parties" (parties that did not receive more than 5% of the vote in the previous election). Compl. [1] ¶ 16; 10 ILCS 5/10-2 (West 2016). The ILGP currently meets the Election Code's definition of a new party. Compl. [1] ¶ 20. In order to appear on the ballot for an upcoming election cycle, the Election Code

requires new parties to: (a) obtain at least 25,000 petition signatures from registered voters in Illinois; (b) within a specified 90-day period; (c) notarize each petition signature page; and (d) satisfy the "Complete Slate" requirement, which mandates that new parties nominate candidates for every open position in the election slate. *Id.* ¶¶ 18, 29-30, 52; 10 ILCS 5/10-2, 5/10-4 (West 2016).

### C. The Petition Review Process

When there is a procedural objection to a new party's petition signatures, the ISBE meets as the State Officers Electoral Board ("SOEB") and the records examination process (also known as a "binder check") is triggered. Compl. [1] ¶ 13; 10 ILCS 5/10-8, 5/10-9, 5/10-10 (West 2016). The records examination process is not statutorily defined in the Election Code, but rather is adopted by the SOEB as its preferred method of review. Compl. [1] ¶ 73. The process involves a line-by-line review of each signature within a challenged petition, and requires the presence of both ISBE staff members and at least one representative of the objector and candidates (known as "watchers"). *Id.* ¶¶ 72, 74-75; 10 ILCS 5/10-8, 5/10-9 (West 2016). Depending on the number of petition signatures at issue, the records examination process can take days, or even weeks, to complete. Compl. [1] ¶ 77. At its conclusion, ISBE staff members issue determinations regarding the validity of each challenged petition signature. After the results of the "binder check" are issued, party members have three days to provide additional evidence to dispute ISBE staff member decisions. *Id.* ¶ 76; 10 ILCS 5/10-10 (West 2016). Afterwards, final ISBE staff member rulings are issued to a hearing officer. The hearing officer

3

has the option of holding an additional evidentiary hearing before giving a recommendation to the SOEB, who then issues the Board's final decision as to the validity of all disputed signatures. Compl. [1] ¶ 78; 10 ILCS 5/10-10 (West 2016). Party members can appeal the Board's decision to the state circuit court of the county in which the hearing of the electoral board was held. 10 ILCS 5/10-10.1 (West 2016).

## II. Procedural History

### A. Plaintiffs' Attempt to Appear on the Ballot

On June 23, 2014, Plaintiff Summers and the other slate candidates of the ILGP timely filed statements of candidacy, accompanied by approximately 30,000 petition signatures, with the ISBE. Compl. [1] ¶¶ 22, 24. On June 30, 2014, Karen Yarbrough ("Yarbrough"), the Democratic Committeeman of Proviso Township, Illinois, filed an objector's petition contesting 10,000 of the ILGP's signatures, thus triggering a "binder check." *Id.* ¶ 26.

### B. The State Officers Electoral Board

On July 7, 2014, the SOEB appointed Philip Krasny ("Krasny") as hearing officer for Yarbrough's objections. Defs.' Mot. J. Pleadings [65] Attach. 2 at 26.[1] On July 10, 2014, Plaintiffs filed a motion with the SOEB to strike and dismiss Yarbrough's petition. *Id.* at 2.

---

[1] Although the Court's analysis of a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is normally limited to the contents of the pleadings, the Court may take judicial notice of matters of public record, including filings and rulings in other court cases. *Huan v. Johnson & Bell,* 757 F.3d 556, 560 (7th Cir. 2014); *Scherr v. Marriottt Intl.*, 703 F.3d 1069, 1073 (7th Cir. 2013).

4

In their motion to strike and dismiss Yarbrough's petition, Plaintiffs addressed nearly all of the constitutional arguments set out in this case. Plaintiffs argued that combined, "the various provisions of the Election Code" impose "unconstitutional burdens upon election for Constitutional office and the formation of a new political party." *Id.* at 7. Specifically, Plaintiffs stated that "the combined requirements of: (a) submitting a full slate petition; (b) containing 25,000 signatures; (c) gathered within 90 days; (d) with circulator affidavits for each sheet being notarized; and (e) under the ever present threats of a Section 10-8 objection" are overly burdensome and unnecessary for the orderly administration of elections. *Id.* at 7-8. Plaintiffs claimed that such an election scheme "imposes excessive and unconstitutional burdens upon new political parties, with no legitimate need for such draconian burdens, in violation of the Candidates' [F]irst and [F]ourteenth Amendment] rights to organize as a new political party." *Id.* Plaintiffs also asserted that Illinois' "Section 10-8 and binder check procedure violate Constitutional equal protection and due process protections" and "[F]irst [A]mendment ballot access rights." *Id.* at 13-14.

Despite Plaintiffs' motion, a records examination took place on July 24, 25, 28, and 29, 2014. *Id.* at 26. The records examination resulted in 5,773 objections being overruled and 7,024 objections being sustained, thereby reducing the number of valid ILGP signatures to 22,663, 2,337 below the statutory minimum. *Id.*

On August 4, 2014, Plaintiffs filed an additional motion with the SOEB objecting to the records examination procedure. *Id.* at 2. On August 5, 2014,

5

Krasny held a hearing where oral arguments were taken on both of Plaintiffs' motions. *Id* at 26. That hearing was continued to and concluded on August 12, 2014. *Id.* at 27. On August 15, 2014, Krasney issued his official recommendation to the SOEB in which he addressed Plaintiffs' grievances, including their constitutional claims. *Id.* at 25-36. Krasney found that there was an insufficient number of valid signatures to place the ILGP candidates on the ballot and that "case law is abundantly clear that administrative agencies have no authority to declare statutes unconstitutional or even to question their validity." *Id.* at 28. Krasney allowed Plaintiffs to file exceptions to his recommendation by August 19, 2014, which they did. *Id.* at 44. On August 22, 2014, the SOEB convened a meeting and heard oral arguments from Plaintiffs' counsel. *Id.* On August 25, 2014, the SOEB issued an order affirming Krasney's recommendations that the ILGP petitions did *not* contain a sufficient number of valid signatures to place the ILGP candidates on the ballot. *Id.* at 38-40.

    **C.**    **The Circuit Court of Cook County**

On September 4, 2014, Plaintiffs appealed the SOEB's decision to the Circuit Court of Cook County. Defs.' Mot. J. Pleadings [65] Attach. 2 at 94. While Plaintiffs' petition noted alleged procedural errors of the Board and petition review process,[2] Plaintiffs once again alleged the aforementioned constitutional violations,

---

[2] Plaintiffs' procedural grievances included that the Hearing Officer improperly relied upon unauthenticated documents and hearsay in the evidentiary hearing, that his recommendation was made against the manifest weight of the evidence, that SOEB/ISBE rules and procedures exceed their statutory authority, and that the order issued on August 25, 2014 was without authority. Defs.' Mot. J. Pleadings [65] Attach. 2 at 94.

6

stating for example that the "SOEB process, as implemented by the SOEB in this instant matter, failed to afford even minimal level of due process to Petitioners, particularly when core, or fundamental, First Amendment ballot access and associational rights are at stake." *Id. at* 110. On September 11, 2014, in a final, appealable order, the circuit court denied Plaintiffs' petition for review and upheld the Board's decision. *Id.* at 113. Plaintiffs chose not to appeal the Circuit Court's decision to the Illinois Appellate Court. Defs.' Mot. J. Pleadings [65] ¶ 1.

**D.  The Present Case**

On July 15, 2014, Plaintiffs filed a new suit in this Court pursuant to 42 U.S.C. § 1983. Compl. [1] ¶ 1. Specifically, Plaintiffs list four counts alleging that ISBE requirements for new parties violate their constitutional rights.

In Count I, Plaintiffs allege that the ISBE's "notarization requirement" violates the First and Fourteenth Amendment. *Id.* ¶ 48. Plaintiffs assert that the notarization requirement serves no compelling state interest and discriminates against "new" political parties by imposing an undue burden disproportionate to "established" political parties. *Id.* ¶¶ 32, 46. They further assert that this burden interferes with the rights of Illinois voters, such as Plaintiff Maniotis, to associate with and advocate for a political party. *Id.* ¶ 47.

Similarly, in Count II, Plaintiffs allege that the "complete slate" requirement violates their First and Fourteenth Amendment rights because it serves no compelling state interest and inappropriately discriminates against "new parties." *Id.* ¶¶ 54-55, 63, 65. They further assert that this burden interferes with the rights

7

of Illinois voters, such as Plaintiff Maniotis, to associate with and advocate for a political party. *Id.* ¶ 64.

In Count III, Plaintiffs allege that there is no compelling state interest to use the "records examination" process as the method of determining signature validity, that the validity of challenged signatures could be determined by a less cumbersome process, and that the process places an undue burden upon and thus discriminates against "new" political parties. *Id.* ¶¶ 81-82, 94. Plaintiffs further contend that this burden interferes with the rights of Illinois voters, such as Plaintiff Maniotis, to associate with and advocate for a political party. *Id.* ¶¶ 96-97. As a result, Plaintiffs assert that the "binder check" process violates the First and Fourteenth Amendments. *Id.* ¶¶ 97-98.

Finally, in Count IV, Plaintiffs allege that, as together applied, the 25,000 signature requirement, 90-day signature gathering period, notarization requirement, "complete slate" requirement, SOEB records examination process, and other procedures, violate the First and Fourteenth Amendment. *Id.* ¶ 111. Plaintiffs argue that, when viewed in their totality, the complained-of state requirements constitute a scheme imposed on Plaintiffs by the Defendants to unconstitutionally limit ballot access to only the two established political parties. *Id.* ¶ 102.

In response to these allegations, Defendants argue that the final judgment entered against Plaintiffs in the Circuit Court of Cook County precludes them from bringing the same grievances in federal court. Defs.' Am. Answer [49] 1. In reply,

Plaintiffs contend that: (1) they were not given a "full and fair opportunity to litigate" their claims in state court; and (2) even if they were given such an opportunity, their federal claims should not be precluded because they are independent of the claims raised at the state level. Pls.' Mot. Strike Defs.' Affirm. Defense [56] 1-2.

### III. Legal Standard

Claim preclusion is an affirmative defense, and "the proper procedure is to raise the defense and then move for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure." *Walczak v. Chicago Bd. of Educ.,* 739 F.3d 1013, 1016 n.2 (7th Cir. 2014); *Carr v. Tillery,* 591 F.3d 909, 913 (7th Cir. 2010). A Rule 12(c) motion "is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Lodholtz v. York Risk Servs. Grp., Inc.,* 778 F.3d 635, 639 (7th Cir. 2015).

A motion to dismiss under Rule 12(b)(6) "challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). To survive a motion to dismiss, a complaint must contain "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The plausibility standard "is not akin to a 'probability

9

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. In making this determination, the Court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of Plaintiff. *Id.*

## IV. Discussion

Pursuant to 28 U.S.C. § 1738, a federal court "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). This bar applies to suits brought under 42 U.S.C. § 1983. *See Allen v. McCurry*, 449 U.S. 90, 91 (1980). Here, the Court applies the preclusion law of Illinois because it is the state that rendered the underlying judgment. *See Arlin-Golf LLC v. Vill. of Arlington Heights*, 631 F.3d 818, 821 (7th Cir. 2011).

Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen*, 449 U.S. at 94. For res judicata to apply to this federal action, the Circuit Court of Cook County's affirmance of the SOEB decision must: (1) have reached a final judgment on the merits; (2) involve the same parties or their privies as the current claims; and (3) constitute the same cause of action as the current claims. *Garcia v. Village of Mount Prospect*, 360 F.3d 630, 635 (7th Cir. 2004). Additionally, Plaintiffs must have had a "full and fair

10

opportunity to litigate" each of their claims. *Montana v. United States*, 440 U.S. 147, 153 (1979). Each factor will be discussed in turn.

### A. Final Judgment on the Merits

First, Illinois preclusion law requires a final judgment on the merits from a court of competent jurisdiction. *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334 (1996). An involuntary dismissal is considered a final adjudication upon the merits unless it is for: (1) lack of jurisdiction; (2) improper venue; or (3) failure to join an indispensable party. Ill. S.Ct. R. 273. None of these exceptions apply here. Def's Mot. J. Pleadings [65] Attach. 2 at 113.

Under Illinois law, the Circuit Court of Cook County possessed authority to review the ISBE's ruling on Yarbrough's objection. *See* 10 ILCS 5/10-10.1 (West 2016). Furthermore, state courts "may consider constitutional challenges when reviewing election board decisions." *Rose v. Board of Election Com'rs for City of Chicago*, 815 F.3d 372, 375 (7th Cir. 2016). Thus, the "final, appealable" order issued by the Circuit Court constitutes a final adjudication on the merits. Defs.' Mot. J. Pleadings [65] Attach. 2 at 113.[3]

### B. Privity Amongst Parties

Second, claim preclusion requires "an identity of parties or their privies." *Walczak v. Chicago Bd. of Educ.*, 739 F.3d 1013, 1016 (7th Cir. 2014). Privity exists

---

[3] The fact that Plaintiffs filed this federal suit prior to their petition for review in state court (July 15, 2014 and September 4, 2014, respectively) does not alter this analysis. If two actions are pending at the same time, "the first of [the] two judgments has preclusive effect on the second." *Unger v. Consolidated Foods Corp.*, 693 F.2d 703, 705 (7th Cir. 1982) (citing 18 Charles Alan Wright, et al., *Federal Practice and Procedure* § 4404 (2d ed. 2016); Restatement (Second) of Judgments, §§ 14, 27, (Am. Law Inst. 1981)).

11

"between 'parties who adequately represent the same legal interests.'" *Lawrence v. Board of Election Com'rs of City of Chicago*, 524 F. Supp.2d 1011, 1022 (N.D. Ill. 2007) (quoting *Burris v. Progressive Land Developers, Inc.,* 151 Ill.2d 285, 296 (1992)).

The only new parties in the instant case are Plaintiff Maniotis, a member of the ILGP who wants the opportunity to vote for the other Plaintiffs, and the ILGP itself. Plaintiffs argue that the addition of these two parties eliminates privity between Plaintiffs' state and federal causes of action. Pls.' Mot. Strike Defs.' First Affirm. Defense [56] 10. However, courts applying Illinois law have found that privity still exists under these circumstances. *Lawrence*, 524 F. Supp.2d at 1022.

In *Lawrence*—also from this district—Lawrence filed nominating papers with the requisite number of signatures with the Election Commissioners of the City of Chicago to run for Alderman of the 48th Ward. *Id* at 1014. Subsequently, members of the incumbent Alderwoman's re-election campaign filed objections to Lawrence's nominating papers. *Id*. A hearing examiner held a hearing and recommended that the Board sustain the objections. *Id.* Lawrence filed a petition for judicial review of the Board's decision in the Circuit Court of Cook County, which was ultimately denied. *Id* at 1015. Lawrence appealed that decision to the Illinois Appellate Court, which upheld the circuit court's decision. *Id*. Lawrence later filed suit in federal district court challenging the constitutionality of the Board's decision and the applicable portion of the election statute under which he was disqualified, a claim he had not brought in the administrative or state proceedings. *Id*. In the

12

federal suit, Lawrence added Citizens to Elect Chris Lawrence (a political committee organized for the purposes of facilitating Lawrence's campaign) and three registered voters of the 48th Ward who desired to vote for Lawrence in the aldermanic election. *Id* at 1013. Defendants in the federal suit filed for summary judgement on a theory of claim preclusion. *Id*. Plaintiffs argued that their claim should not be precluded because Lawrence was not in privity with Citizens to Elect Chris Lawrence or the three new voter plaintiffs. *Id* at 1021. The court disagreed. According to the court, even though Lawrence's interests "were slightly different than those of the other plaintiffs" (in that the Board's decision affected Lawrence's own ability to run for public office), Lawrence nonetheless "adequately protected their interests." *Id*. at 1022. If anything, Lawrence "had a stronger incentive" to raise relevant issues "than the other plaintiffs did, since the Board's decision affected him more directly than the other plaintiffs." *Id*.

Similarly, in *Hartke v. Chicago Bd. of Election Com'rs,* 651 F.Supp. 86, 87 (N.D. Ill. 2007), the plaintiffs ("the Hartke plaintiffs") brought suit in federal district court challenging the constitutionality of the defendants' refusal to place a referendum on the ballot for a November 1986 election. Three separate plaintiffs ("the Lipinski plaintiffs") had previously filed the exact same challenge in an administrative hearing and in state court, both of which upheld the decision of the administrative board. *Id.* at 87-88. Defendants in the federal case moved for summary judgment on a theory of claim preclusion. *Id.* The court found that the Hartke plaintiffs were in privity with the Lipinski plaintiffs even though the Hartke

13

plaintiffs had no prior contact with the Lipinksi plaintiffs or input in the Lipinski plaintiffs' state action. *Id.* at 91. According to the court,

> [T]he Lipinski plaintiffs vigorously urged [the Circuit Court] to force the Board to place the . . . referendum on the November 4 ballot. This is precisely what the Hartke plaintiffs pray for in this case. Of course, that the Board and the state courts rejected the Lipinski plaintiffs' pleas cannot be evidence of inadequate representation. The pleas were rejected only after the Lipinski plaintiffs briefed and argued at length and with competent counsel the alleged illegality of keeping the . . . referendum off the ballot. This constitutes fully adequate representation of the same interests which the Hartke plaintiffs now seek to advocate here.

*Id.* at 90. The court also rejected the Hartke plaintiffs' argument that they were not in "privity" with the original plaintiffs because "the allegations of constitutional violations [in the state case] were general." *Id.*

> Privity does not require, for purposes of 'adequate representation,' that the prior plaintiff raise and formulate all conceivable arguments on behalf of a cause of action in the best possible fashion . . . it is sufficient that the legal theories actually adduced in support of the prior plaintiffs' prayer for relief competently advocate the same interest when prayed for by subsequent plaintiffs.

*Id.* at 90-91 (internal citation omitted).

Here, as in *Lawrence* and *Hartke,* Plaintiff Maniotis and the ILGP are praying for the same form of relief, and relying on the same legal theories, as the original Plaintiffs. The "extensiveness of the pleadings," the briefing, the state court proceedings, and the "integrity of the lawyering" all demonstrate that Plaintiff Maniotis and the ILGP's interest in overturning portions of the Illinois Election Code was competently advocated by the original Plaintiffs. *Id.* at 91. Thus, privity

14

exists amongst the plaintiffs in the state action and Plaintiffs in this case, and the second prong of Illinois' test for res judicata is met.

### C. Same Cause of Action

Illinois employs a "transactional test" in comparing causes of action for claim preclusion. This test examines whether claims "arise from a single group of operative facts, regardless of whether they assert different theories of relief." *Rose*, 815 F.3d at 375. As a "corollary to the transactional rule," Illinois has also adopted the doctrine of "merger and bar," which "precludes the sequential pursuit not only of claims actually litigated, but of those that *could* have been litigated." *Garcia*, 360 F.3d at 639 (emphasis added).

Plaintiffs argue that the claims raised in this case are "independent" from those brought at the state level. Pls.' Mot. Strike Defs.' Affirm. Defense [56] 2. However, Plaintiffs' claims in the SOEB administrative hearing, the Circuit Court of Cook County, and this federal case all stem from the same set of facts: the November 2014 election and the ISBE's procedures and ultimate refusal to allow ILGP candidates on the ballot. Thus, both cases derive from the same set of "operative facts." Additionally, the four specific counts raised in this action were argued at the administrative level, and constitutional challenges were further raised in Plaintiffs' petition for Circuit Court review.

Moreover, even if the current causes of action were *not* fully argued in state court, they *could* have been adjudicated at Plaintiffs' discretion. See *Hartke*, 651 F. Supp. at 91 (if "the constitutional issues were not articulated [at the state level] in

15

exactly the fashion they are here, that only means that issues which could have been raised were not. Under res judicata, such issues are still barred"). Under well-settled law, state courts possess the power to consider constitutional challenges when reviewing election board decisions. *Rose*, 815 F.3d at 375. Thus, while "an administrative agency lacks the authority to declare a statute unconstitutional, or even to question its validity," Defs.' Mot. J. Pleadings [65] Attach. 2 at 28, a party in "an administrative proceeding should assert a constitutional challenge on the record before the administrative tribunal" in order to preserve the issue for appeal in court proceedings. *Cinkus v. Village of Stickney Municipal Officers Electoral Bd.*, 228 Ill. 2d 200, 214 (2008), *as modified* (Apr. 23, 2008). Such a practice "avoids piecemeal litigation and, more importantly, allows opposing parties a full opportunity to refute the constitutional challenge." *Id.*

Thus, for the purposes of res judicata, the causes of action in this case are the same as those that were brought (or could have been brought) in Plaintiffs' state court proceeding.

### D. Full and Fair Opportunity to Litigate

This Court grants preclusive effect to a state court judgment only if the plaintiff had a "full and fair opportunity" to litigate their claims in the prior action. *Rose,* 815 F.3d at 376 (citing *Kremer v. Chem. Constr. Co,* 456 U.S. 461, 480-82 (1982)). A plaintiff "is afforded a full and fair opportunity to litigate his claims so long as the state court proceedings complied with the minimum procedural requirements of the Due Process Clause." *Liceri v. City of Chicago*, 298 F.3d 664,

16

666-67 (7th Cir. 2002). Due process "is a flexible concept"; there is no "rigid constitutional code of procedural necessities." *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 320, 326 (1985). However, "at a minimum, due process requires notice and an opportunity to be heard." *Lemon v. Tucker*, 695 F. Supp. 963, 970 (N.D. Ill. 1988), *modified on recons.*, No. 84 C 4021, 1989 WL 20832 (N.D. Ill. Mar. 9, 1989), and *aff'd sub nom. Luckett v. Jett*, 966 F.2d 209 (7th Cir. 1992) (citing *Cleveland Bd. of Education v. Loudermill,* 470 U.S. 532, 546 (1985); *Brock v. Roadway Exp., Inc.,* 481 U.S. 252, (1987)).

Here, Plaintiffs were notified of their opportunity to appeal the SOEB's ruling to both the Circuit Court of Cook County and the Illinois Appellate Court. To the former, Plaintiffs submitted a written brief supporting their petition for review and received the court's reasons for denial in open court. Defs.' Mot. J. Plead. [65] Attach. 2 at 95-111, 113. Plaintiffs opted to waive the latter at their peril. These facts constitute a sufficient "opportunity to be heard" for the purposes of due process.

### E. Controlling Precedent: *Rose v. Board of Election Commissioners for City of Chicago*

Finally, this Court finds the Seventh Circuit's decision in *Rose* particularly instructive. 815 F.3d at 372. In *Rose*, the court affirmed Judge St. Eve's well-reasoned 2015 decision from this district, No. 15–cv–382, 2015 WL 1509812 (N.D. Ill. Mar. 30, 2015), granting the defendants' motion for judgment on the pleadings based upon their affirmative defense of claim preclusion.

17

In *Rose*, the plaintiff submitted nomination papers along with the requisite signatures for the office of alderman in Chicago's 7th Ward. 815 F.3d at 373. Several individuals objected to Rose's nomination papers and the SOEB conducted a records examination. *Id.* After a hearing for each objection, the Board ultimately decided that Rose's name should not be placed on the ballot for the 2015 general election. *Id.*

As in this case, Rose then filed a petition for review of the Board's decision in the Circuit Court of Cook County challenging the constitutionality of the signature requirement for aldermanic elections. *Id.* In particular, Rose claimed, as Plaintiffs do here, that the requirement violated the First and Fourteenth Amendments. *Id.* at 374. In a written decision, the Circuit Court denied Rose's petition for review. *Id.* Meanwhile, Rose filed an almost identical claim in federal district court. *Id.* The defendants in the district court case filed a motion to dismiss Rose's complaint on a theory of claim preclusion, which the trial court granted. *Id.*

The district court found, as this Court finds here, that: (1) the Circuit Court of Cook County's decision to deny Rose's petition for review was a final judgment on the merits; (2) there was privity between the parties; (3) there was an identity of claims between the state and federal cases; and (4) Rose received a full and fair opportunity to litigate his claims at the state level. *Rose,* 2015 WL 1509812 at *7-8. Additionally, the district court noted that the relevant test "is not whether [Plaintiff] was able to litigate his claims before the Board of Elections, but instead whether he had the 'full and fair opportunity to litigate' his claims in the Cook

18

County Action . . . Plaintiff had the *opportunity* to raise each of the claims he asserts here in the Cook County Action, which rejected each of the claims that he raised." *Id.* at *8 (emphasis added).

The Seventh Circuit affirmed the district court's reasoning, and held that all three requirements of claim preclusion had been satisfied and that Rose had been given a full and fair opportunity to litigate. *Rose*, 815 F.3d at 375. The court noted that "there is no indication that the state court proceedings were insufficiently extensive or substantively unfair, and the mere fact that Rose was displeased with the outcome of those proceedings does not amount to a violation of due process." *Id.* at 376.

Plaintiffs merely dismiss the *Rose* decision as "unfortunate," Pls.' Mot. Strike Defs.' First Affirm. Defense [56] 5, and dwell instead upon their characterizations of the purported unfairness of the state court review. Pls.' Resp. Defs.' Mot. J. Pleadings [82]. Nevertheless, "what is fair and equitable is the consistent application of well-settled principles of claim preclusion under controlling law." *Rose*, 815 F.3d at 376. Thus, while Plaintiffs may be disappointed with the result, equity—as well as the law—compels this Court to find that res judicata bars their claims from being re-litigated in this action.

**V.     Conclusion**

For the reasons explained above, Defendants' Motion for Judgment on the Pleadings on their affirmative defense of claim preclusion [65] is granted. Plaintiff's

19

Motion to Strike Defendant's First Affirmative Defense [56] is denied. Civil case terminated.

IT IS SO ORDERED

Date: July 25, 2016                               Entered:

                                                                   John Robert Blakey
                                                                   United States District Judge